Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3511 | **DATE** | 6/5/2001 |
| **CASE TITLE** | | USA vs. Tech Refrigeration | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court denies defendant's motion to dismiss (8-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN - 7 2001 | |
| | Notified counsel by telephone. | | date docketed | 12 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| OR | courtroom deputy's initials | 01 JUN -6 PM 5: 19 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 00 C 3511 |
| ) | |
| TECH REFRIGERATION, DIANE ) | |
| KULASKI, and THOMAS KULASKI, ) | |
| ) | |
| Defendants. ) | |

DOCKETED

JUN - 7 2001

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The United States government sued Tech Refrigeration, its president Diane Kulaski, and its general manager Thomas Kulaski, for defrauding Amtrak. The government alleges that the defendants, along with Raymond Corcoran, a former Amtrak employee who headed Amtrak's project to redevelop Chicago's Union Station, bilked Amtrak out of tens of thousands of dollars through an over-billing and kickback scheme. It claims that Tech submitted fraudulent claims totaling $87,800 and kicked back just over $52,000 to Corcoran. In October 1999, Corcoran pled guilty to mail fraud. The government filed this suit, along with several others against other contractors who allegedly engaged in similar schemes with Corcoran, in June 2000. The complaint alleges violations of the False Claims Act, 31 U.S.C. §§3729(a)(1), (2) and (3), as well as common law claims of payment by mistake and unjust enrichment. The defendants have moved to dismiss under Rule 12(b)(6), arguing that the claims are barred by the statute of limitations.

The parties have discussed only the False Claims Act claim, so we will focus our analysis

there as well. We begin with the language of the False Claims Act. The statute provides that a civil action under §3730 may not be brought –

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. §3731(b). "The six-year limitations period begins to run 'on the date the claim is made, or if the claim is paid, on the date of the payment.'" *United States ex rel. Kreindler & Kreindler v. United Technologies, Corp.*, 777 F. Supp. 195, 200 (N.D. N.Y. 1991) (quoting *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 829 (S.D.N.Y. 1986), *aff'd*, 817 F.2d 1007 (2d Cir. 1987)). *See also Jana, Inc. v. United States*, 41 Fed. Cl. 735, 743 (Ct. Cl. 1998) (when the government pays a false claim, the FCA statute of limitations begins to run on the date of final payment).

The complaint, however, does not identify the dates of Amtrak's payments; it says only that the scheme spanned from 1990 through 1995. These allegations do not permit dismissal of the complaint under Rule 12(b)(6). A contention that the statute of limitations bars an action is an affirmative defense, meaning that the plaintiff is not required to negate it in its complaint. *Gomez v. Toledo,* 446 U.S. 635, 630 (1980). If the complaint alleged facts demonstrating that the tolling provision does not apply, the government would have pleaded itself out of court, requiring dismissal of the complaint. *See Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (1993). The government's complaint has no such allegations, and it is not required to have

2

any: as the Seventh Circuit said in *Tregenza*, "it does not follow from the fact that a plaintiff can get into trouble by pleading more than he is required to plead that he is required to plead that more." *Id*. Under the circumstances, we are unable to say based on the complaint's allegations that the government will be unable to establish that its claim is timely. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants attached to their motion two items that supply more detail regarding the timing of the allegedly false claims and the date when Amtrak may have obtained evidence of their existence. The first item is a listing of the dates of the alleged kickback checks; the second is a copy of an administrative subpoena served on Tech in late March 1996 by Amtrak's Office of Inspector General, seeking among other things documents concerning defendants' dealings with Corcoran. These documents, which are not part of the government's complaint, cannot serve as a basis for dismissal under Rule 12(b)(6). It is true, as *Tregenza* indicates, that when a defendant attaches evidence to a motion to dismiss, the Court has the option of converting defendant's motion to a motion for summary judgment. *Tregenza*, 12 F.3d at 719. The Court declines to take that step, however, for defendants' evidence, even if undisputed, would be insufficient to entitle defendants to summary judgment. We will discuss why this is so, in order to guide the parties should defendants seek summary judgment at a later time.

Defendants have supplied the dates on which Tech is claimed to have issued the kickback checks to Macor, Corcoran's company, which according to the allegations in the complaint would have occurred after Amtrak paid the inflated bills. The alleged kickback checks were written on January 18, 1990; sometime around April 30, 1991; April 12, 1993; February 17, 1994; March 21, 1994; May 18, 1994; June 9, 1994; and September 8, 1994. The Department of

3

Justice filed suit on June 9, 2000. Thus, under the best case scenario for the government (assuming Tech wrote its kickback check the same day Amtrak paid the claim), all but the last two claims appear to have been made more than six years before suit was filed.

If the statute of limitations under §3731(b) were six years, period, that would be the end of the story with regard to most of the government's claim. But the statute contains a tolling provision; under §3731(b)(2), the government gets three years from the date "when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." This brings us to the second item attached to defendants' motion: a copy of an administrative subpoena served by Amtrak's OIG in late March 1996, requesting records concerning dealings between Tech and Corcoran or Macor, and a certificate of compliance indicating that Tech produced the responsive records to the OIG on May 1, 1996. Defendants argue that §3731(b)(2)'s three year clock should be deemed to have started on that date. The government argues that the clock did not start to run until June 10, 1997, when Amtrak officials supposedly first told the United States Attorney's Office of their suspicions that defendants had violated the FCA. Determination of who is right turns, in part, on how the Court construes the phrase "official of the United States charged with responsibility to act in the circumstances." If it means Amtrak, as defendants argue, the clock would have started running before June 10, 1997, and the claims would be barred under §3731(b)(2); if it means the Department of Justice, as the government argues, the claims may be timely.[1]

---

[1] Under either scenario, it would appear that the government's claim based on Tech's initial false claim is time-barred. The claim was paid, at the latest, in January 1990; this suit was
(continued...)

4

Section 3731 does not contain a definition of the term "official of the United States charged with responsibility." The only part of the legislative history of §3731(b)(2) that is published – the Senate Report on its version of the legislation that ultimately was enacted – says that the statute "include[s] an explicit tolling provision on the statute of limitations under the False Claims Act. The statute of limitations does not begin to run until the material facts are known by an official within the Department of Justice with the authority to act in the circumstances." S. Rep. No. 345, 99th Cong., 2d Sess. 30 (1986), *reprinted in* U.S. Code Cong. & Admin. News 5266, 6295. This suggests that the government's construction is the right one. However, as one district court has suggested, the Senate Report may have concerned an earlier version of the proposed legislation that included different wording. *See United States ex rel. Condie v. Board of Regents of the University of California,* No. C89-3550, 1993 WL 740195, at *1 (N.D. Cal. Sept. 7, 1993). In view of this ambiguity, the legislative history is an uncertain guide to the meaning of "official of the United States."

In fact we need not look to the legislative history to determine the meaning of the term. The provision of the FCA that immediately precedes §3731 makes it the duty of the Attorney General to diligently investigate violations of the statute and identifies only private relators and the Attorney General – not other government agencies – as parties who may sue under the statute. 31 U.S.C. §3730(a) & (b)(1). For this reason, we agree with those courts that have concluded that the term "official of the United States charged with responsibility to act," as used in §3731(b)(2), means pertinent Department of Justice officials. *Accord, United States v.*

---

[1](...continued)
filed more than ten years later. Even if tolling is permitted under §3731(b)(2), the statute provides that suit must be filed no more than ten years after the violation.

5

*Incorporated Village of Island Park,* 791 F. Supp. 354, 363 (E.D.N.Y. 1992) (holding that the official charged with responsibility to act must be an official within the DOJ with the authority to act in the circumstances); *United States v. Macomb Contracting Corp.,* 763 F. Supp. 272, 274 (M.D. Tenn. 1990) (holding without discussion that "[t]he 'official of the United States charged with responsibility' could only have been the appropriate official of the Civil Division of the Department of Justice, which alone has the authority to initiate litigation under the Act."). *But see United States v. Kensington Hospital,* No. 90-5430, 1993 WL 21446, at *12 (E.D. Pa. Jan. 14, 1993) (indicating that knowledge by IRS and FBI agents could trigger the limitations period).[2]

That does not mean that the statute of limitations begins to run only when a responsible Department of Justice official *actually knows* the material facts: the statute says the clock starts running when the material facts "are known or *reasonably should have been known*" to the DOJ. It is possible to conceive of circumstances in which the statute might begin to run before the DOJ is actually advised of the pertinent facts. In *Island Park,* the government sued a village and several of its officials alleging, among other things, violations of the FCA; it claimed that the defendants misused Housing and Urban Development funds in connection with a HUD-sponsored block grant program. HUD began receiving complaints about the village's administration of the program in 1981; it conducted an extensive internal investigation into the

---

[2] The court in *United States v. Incorporated Village of Island Park,* 791 F. Supp. 354, 363 (E.D.N.Y. 1992), indicated that in at least one case, an action under the FCA was brought by a government corporation in its own name. *See Federal Crop Insurance Corp. v. Hester,* 765 F.2d 723 (8th Cir. 1985). This does not undermine our construction of the statute. The issue was not raised in *Hester,* and in any event there is nothing in the FCA that would preclude the Attorney General, after learning of the material facts, from delegating to another government agency the authority to bring a particular FCA claim.

allegations of misconduct, and in 1984 it issued an audit report, which was widely disseminated throughout HUD. The government filed suit under the FCA in 1990, and the defendants moved for summary judgment on statute of limitations grounds. The government argued that the suit was timely because it had been filed less than a year after the DOJ had first learned of the fraud through press reports published in June 1989. The district court held that for purposes of §3731(b)(2), the relevant question was when the DOJ knew or reasonably should have known about the fraud, not when HUD knew about it. *Island Park*, 791 F.Supp. at 361-63. But it went on to say that tolling of the statute of limitations "assumes due diligence on the part of the party charged with the responsibility of uncovering the fraud." *Id.* at 363 (quoting *United States v. Uzell*, 648 F. Supp. 1362, 1367 (D.D.C. 1986)). In the final analysis, the court concluded that "the common knowledge of the Island Park affair at all levels of the federal government" – specifically, at HUD and its Office of Inspector General – reasonably could be attributed to the Department of Justice. *Island Park*, 791 F.Supp. at 363-64. Based on this conclusion, the court held that the government's FCA claim was time-barred. *Id.* at 364.

This Court agrees with *Island Park's* conclusion that there may be circumstances in which the knowledge of government agencies other than the Department of Justice might trigger the running of the FCA statute of limitations. *See also United States v. Kass,* 740 F.2d 1493, 1498 (11th Cir. 1984) (holding that "the government through its agent Blue Shield had the facts making up the 'very essence of the right of action,'" thereby triggering the limitations period in §§2415 & 2416(c), which are virtually identical to §3731(b)); *United States v. Kensington Hospital,* No. 90-5430, 1993 WL 21446, at *12 (E.D. Pa. Jan. 14, 1993) (suggesting that knowledge by IRS and FBI agents could trigger the limitations period); *Kreindler & Kreindler,*

777 F. Supp. at 204 (suggesting that knowledge by senior Department of Defense officials could trigger the limitations period).[3] Such a finding should be reserved for unusual situations; as the court in *Condie* noted, the scant legislative history that exists under §3731(b) suggests that the "should have known" provision should be applied sparingly, and defendants are protected against inordinate delay by the ten-year outside limit contained in the statute. *See Condie*, 1993 WL 740195, at *2.

The record in this case is nowhere near as clear cut as it was in *Island Park*. We know only that Amtrak's OIG obtained Tech's records on May 1, 1996; we have no idea what those records indicated, what else the OIG did to investigate the matter and what it learned, whether knowledge of the investigation was widely known inside or outside of Amtrak, whether OIG had any communications with Department of Justice personnel, whether it reached any conclusions or issued a report, or indeed any details at all about the investigation. In short, on the current record the Court cannot say that DOJ knew or should have known of the material facts before June 10, 1997. Thus even if we had converted defendants' motion to a summary judgment motion, their evidence would be insufficient to entitle them to summary judgment on the FCA claim.

As noted earlier, the parties did not discuss the common law claims in their memoranda. Those claims, like the FCA claim, are governed by a six-year statute of limitations. *See* 28 U.S.C. §2415(a); *United States v. First National Bank of Cicero*, 957 F.2d 1362, 1371 (7th Cir. 1992). That statute is subject to a tolling provision that is worded in a way virtually identical to

---

[3] The *Kreindler* decision is of limited precedential value; in affirming, the Second Circuit stated that the district court should not have reached the limitations issue. *See United States ex rel. Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155 (2d Cir.1993).

8

§3731(b)(2). *See* 28 U.S.C. §2416(c). It is unclear, however, whether our analysis of the term "responsible official of the United States" applies equally to §2416(c); in contrast to the False Claims Act, there is no provision in or associated with §2416 that limits authority to bring suit to the Attorney General. And there is some authority indicating that officials at the contracting agency may be "responsible officials" for purposes of §2416(c). *See United States v. Boeing*, 845 F.2d 476, 481-82 (4th Cir. 1988), *rev'd on other grounds*, 494 U.S. 152 (1990). But for present purposes, summary judgment would be inappropriate on the common law claims for the same reasons noted in the preceding paragraph with regard to the FCA claim.

## Conclusion

For the reasons explained above, the Court denies defendants' motion to dismiss [Item 8-1].

MATTHEW F. KENNELLY
United States District Judge

Date: June 5, 2001